IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| MILDRED F. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:08cv811-MHT |
| | ) | (WO) |
| CHILTON COUNTY COMMISSION, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

Plaintiff Mildred F. Johnson filed this lawsuit
against defendant Chilton County Commission, claiming
that she was subjected to a hostile-work environment and
denied a promotion because of her race, and that she was
retaliated against for filing a charge of discrimination
with the Equal Employment Opportunity Commission (EEOC),
all in violation of Title VII of the Civil Rights Act, as
amended, 42 U.S.C. §§ 1981a, 2000e through 2000e-17.
This court has jurisdiction pursuant to 42 U.S.C.
§ 2000e-5(f)(3).

The case is before the court on the commission's
motion for summary judgment, which will be granted

because, as explained more fully below, the commission is not Johnson's employer.

## I.   SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The court's role at the summary-judgment stage is to view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II. BACKGROUND

Since 1983, Johnson has worked as a 911 dispatcher for the Chilton County E-911 Department, an emergency

-2-

communication system.  She is one of two African-American employees in an office of 21 employees.

### A.  History of the E-911 Department

The Chilton County Commission established the E-911 Department in 1988 by resolution.  The resolution created an emergency communication district for Chilton County, Alabama, pursuant to 1975 Ala. Code § 11-98-1 et seq., which enabled counties and municipalities to create "911 communication districts" to handle emergency communications services.  Id.  These communication districts are "political and legal subdivisions of the state, with power to sue and be sued in their corporate names and to incur debt and issue bonds."  1975 Ala. Code § 11-98-2.  Alabama law provides that, unless the creating entity assumes control over the emergency communication system, each of these districts is to be governed by a board of commissioners with the power to hire employees, to enter into contracts, and all

-3-

"authority and powers necessary to establish, operate, maintain, and replace an emergency communication system." 1975 Ala. Code § 11-98-4(f).   The statute does not contemplate any supervision of this board, except that it "shall present to the creating authority for approval the acquisition, disposition, or improvements to real property."   1975 Ala. Code § 11-98-4(h).

The E-911 Board of Commissioners has seven members, including two mayors, three Chilton County Commissioners, a representative of the Sheriff's Office, and a representative from the Fire Department.   The E-911 Department receives about 20 % of its funding from general Chilton County funds.   The commission provides payroll services for the E-911 Department for a fee, but the funds from which the paychecks are drawn are managed by the E-911 Board.   E-911 Department employees are issued a "Standard Operating Procedure" handbook that informs them about E-911 Department policies and procedures. Although the handbook references Chilton

-4-

County policies, nothing in the handbook suggests that the commission is at all involved in the hiring, training, supervising, promoting, or firing of E-911 Department employees.  In fact, the handbook explicitly provides that the E-911 Board is the final arbiter of employment decisions regarding E-911 Department employees.

### B.  Johnson's Claims

Johnson alleges that she has been subjected to inappropriate comments at various points during her tenure with the E-911 Department.  During the early years of her employment, she was called by names that she found offensive but that her colleagues insist were playful. Johnson also overheard a colleague use "nigger" to refer to African-Americans; on another occasion a colleague used the word "nigger" in a joke; and on another occasion she heard a colleague use the word "colored" to refer to African-Americans.

In addition, Johnson describes two incidents that she found offensive.  In the first incident, a computer cable was left hanging from the ceiling of the E-911 Department office with a double-knot at the end; Johnson contends that the cord resembled a noose and that her supervisor told her it was for her.  The commission contends that the cord was put in by an independent contractor to connect electronic equipment; that it did not resemble a noose; and that Johnson's supervisor was saying that the cord was there for dispatchers because it would connect to equipment that the dispatchers used.  In the second incident, Johnson was required to work in a back-up E-911 Department office where a Confederate Flag was hanging from a shelf.  The commission responds that it was not aware of the flag; the flag was small; the office was a back-up location used in the event of technical problems; Johnson did not bring the flag to anyone's attention at the time; and Johnson was required to work in that office for only about two hours.

-6-

A few days after the flag incident, in September 2007, Johnson filed a charge with the EEOC alleging that she was being subjected to a hostile-work environment.

Johnson also contends that she was denied a promotion because of her race.  In the summer of 2007, the director of the E-911 Department announced that she was retiring. Johnson, anticipating that the assistant director would be promoted to director, submitted a letter to her supervisors expressing her interest in the assistant director position.  Ultimately, the E-911 Board promoted the then-assistant director to director but eliminated the assistant director position.  Johnson contends that the position was eliminated to avoid giving her the job; the commission contends that it was eliminated because the work could be distributed among existing staff and it was financially beneficial to eliminate the position.

In early 2008, shortly after the new director took over, Johnson was disciplined on two occasions for improperly handling two different calls.  In both cases,

-7-

the director reviewed the calls after receiving complaints about how they were handled and concluded that Johnson had erred.  On the second occasion, Johnson was suspended for one day without pay.  Johnson contends that the disciplinary actions were retaliation for filing her EEOC charge.

Johnson filed a second EEOC charge on February 12, 2008, this time alleging retaliation.  The commission denies any retaliation, observing that Johnson had been disciplined on five other occasions during the course of her employment prior to the filing of any EEOC charge.

In October 2008, Johnson filed this lawsuit claiming that she was discriminated against because the commission maintained a hostile-work environment throughout her career with the E-911 Department and because she was not promoted to assistant director in 2007, and claiming retaliation for the one-day suspension she received in February 2008.

-8-

Although the commission responded to both EEOC charges on the merits, in this litigation it has taken the position that it is not Johnson's employer. Rather, it contends that her employer is the E-911 Board.

### III.  DISCUSSION

#### A.  Whether Johnson is a Commission Employee

The commission contends that summary judgment must be granted as to all of Johnson's claims because her employer is the E-911 Board, not the commission. Johnson maintains that she is employed by the commission, or, alternately, that she is employed by the board, which is an agent of the commission, and the commission is responsible for the acts of its agent. The commission denies that the board is its agent.

Johnson is not directly employed by the commission; she does not report to the commission or work at the commission's office. The question is thus whether there is some other basis for treating the commission as

-9-

Johnson's employer.  Whether an individual is an employee
of an entity within the meaning of Title VII (which
defines an "employee" circularly as "an individual
employed by an employer," 42 U.S.C. § 2000e(f)) depends
on "the economic realities of the situation" when "viewed
in light of the common law principles of agency and the
right of the employer to control the employee." Cobb v.
Sun Papers, Inc., 673 F.2d 337, 340-41 (11th Cir. 1982);
see also Cuddeback v. Fla. Bd. of Educ., 381 F.3d 1230,
1234 (11th Cir. 2004) (applying principles from Cobb to
determine whether graduate student was "employee" within
meaning of Title VII).  An agency relationship exists
when two parties, a principal and an agent, agree "that
the agent shall act on the principal's behalf and subject
to the principal's control."  Restatement 3d of Agency,
§ 1.01.  Courts evaluate control in the Title VII context
in light of the totality of the circumstances, including
"the authority to hire, transfer, promote, discipline or
discharge; the authority to establish work schedules or

-10-

direct work assignments; [and] the obligation to pay or the duty to train the charging party." <u>Lyes v. City of Riviera Beach</u>, 166 F.3d 1332, 1345 (11th Cir. 1999) (quotation marks and citations omitted).

Johnson has not shown that the commission exerts the type of control required to qualify as her employer within the meaning of Title VII.  She points out that the commission provides substantial financial support to the E-911 Department; department paychecks are signed by a member of the commission; department employees are told that their benefits are provided by Chilton County; department employees must follow the policies and procedures of Chilton County; and the commission defended against her EEOC charges without denying it was her employer.  However, these facts show only that the commission provides financial and administrative support to the E-911 Board.  That the support includes elements that indirectly bear on control over employment, such as payroll and benefit administration (which are provided

-11-

for a fee), is not enough to demonstrate control over the E-911 Board or E-911 Department employees.  Johnson has not shown that the commission exercises any control over E-911 Department <u>employment</u> decisions or employees, explicitly or implicitly.  Rather, at the time of her complaint, such decisions were made or reviewed by supervisory staff of the E-911 Department, the Sheriff and the E-911 Board.  The E-911 Department "Standard Operating Procedures" given to Johnson reflect that the E-911 Board is the final arbiter of employment decisions regarding E-911 Department employees.  The commission does not have the authority to review adverse-employment decisions and never has; does not make or review decisions about hiring, firing, or discipline of E-911 Department employees; and does not have any apparent policy-making authority over the department or the board.  Indeed, under Alabama law, the E-911 Department is a state department.  <u>See</u> 1975 Ala. Code § 11-98-2; <u>Hutchinson v. Choctaw County Emergency Communication</u>

District, 906 So. 2d 933, 937 (Ala. Civ. App. 2004)
(observing that all emergency communication districts are
political and legal subdivisions of the State).  In sum,
Johnson has failed to show that the commission exercises
any control over E-911 Department employees.

Because Johnson cannot show that she is employed by
the commission, summary judgment will be granted in favor
of the commission.

B.  Whether Johnson May Amend Her Complaint

Johnson also makes a passing request for permission
to amend her complaint to add or substitute the E-911
Board as a defendant.  The argument, offered in
supplemental briefing requested by the court, is a
conditional one: Johnson asks the court to allow her to
amend the complaint if the court finds that the
commission is not her employer.  She contends that this
case presents an instance of "misnomer" that can be
corrected pursuant to Fed. R. Civ. P. 15(c), which, in

-13-

certain circumstances, allows an amended complaint to relate back to its original filing date when the amendment corrects a "mistake" about the defendant's identity. Fed. R. Civ. P. 15(c). Such relation back would be necessary here, as Johnson was required to file suit within 90 days of receiving her EEOC right-to-sue letter.

As a preliminary matter, the court is not required to consider this type of "cursory and conditional request to amend." Ferrell v. Durbin, 311 Fed. Appx. 253, 259 (11th Cir. 2009) (determining that district court not required to grant leave to amend sua sponte where no motion to amend was filed and plaintiffs made only "a cursory and conditional request to amend" in their opposition to motion to dismiss); see also Long v. Satz, 181 F.3d 1275, 1279-80 (11th Cir. 1999) (holding that district court did not abuse discretion in refusing to grant plaintiff leave to amend her complaint where she failed to move for such leave). Moreover, the request is not timely. The

-14-

uniform scheduling order set a deadline of December 30, 2008, to add parties.  This request comes long after the deadline.

Regardless, Johnson's request must be denied, for her claim of mistake is without merit.  "The Advisory Committee Notes (1991) state that Rule 15(c) deals with 'the problem of a misnamed defendant.' ... Nothing in the Rule or in the Notes indicates that the provision applies to a plaintiff who was fully aware of the potential defendant's identity but not of its responsibility for the harm alleged." Powers v. Graff, 148 F.3d 1223, 1227 (11th Cir. 1998).  Moreover, Johnson's "mistake" continued well after she was put on notice by the commission's answer that it was not her employer.  Rather than amend the complaint at that time, Johnson has vigorously and consistently argued that the commission is her true employer.  Thus, Johnson's failure to name the E-911 Board as a defendant in the lawsuit was not a case of mistake, but rather a strategic decision that does not

come within the letter or spirit of Rule 15(c).  <u>See</u>
<u>Powers</u>, 148 F.3d at 1227 ("[E]ven the most liberal
interpretation of 'mistake' cannot include a deliberate
decision not to sue a party whose identity plaintiff knew
from the outset.") (<u>quoting</u> <u>Wells v. HBO & Co.</u>, 813 F.
Supp. 1561, 1566 (N.D. Ga. 1992) (Camp, J.)).


                          ****


     For the foregoing reasons, the Commission's motion
for summary judgment will be granted in all respects.  An
appropriate judgment will be entered.

     DONE, this the 29th day of July, 2009.


                       <u>   /s/ Myron H. Thompson   </u>
                       UNITED STATES DISTRICT JUDGE